**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:                                              Chapter 7

Austin Brode Howard,                                Case No. 22-11866-LMI

        Debtor.
_____/

Chris M. Carlos,
as trustee for the Chris M. Carlos Revocable
Trust dated May 28, 2008, as amended and
restated,

        Plaintiff,                          Adv. Pro. No. 22-_____-LMI

    v.

Austin Brode Howard,

        Defendant.
_____/


**COMPLAINT**

Plaintiff, Chris M. Carlos ("Carlos"), as trustee for the Chris M. Carlos Revocable Trust

dated May 28, 2008, as amended and restated (the "Carlos Trust") sues Defendant Austin Brode

Howard ("Howard" or  "Debtor") pursuant to section 523(a) of title 11 of the United States Code,

11 U.S.C. § 101 *et seq*. ("Bankruptcy Code") and Rules 4007 and 7001 of the Federal Rules of

Bankruptcy Procedure ("Bankruptcy Rules"), seeking to except from discharge certain debts owed

by Mr. Howard to the Carlos Trust. In support thereof, the Carlos Trust alleges as follows:

**NATURE OF ACTION, PARTIES, JURISDICTION, AND VENUE**

1.      This is an action seeking a determination that certain debts owed to the Carlos Trust from Mr. Howard are non-dischargeable pursuant to section 523 of the Bankruptcy Code. The procedural predicates for the relief sought are Bankruptcy Rules 4003 and 7001.

2.      Mr. Carlos is an individual resident of Georgia. He is the sole trustee of the Carlos Trust, and is authorized to sue on the trust's behalf to protect trust property. *See, e.g.*, Fla. Stat. § 736.0816(23).

3.      Mr. Howard is an individual resident of Miami-Dade County, Florida, as alleged in his bankruptcy petition.

4.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a).

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**GENERAL ALLEGATIONS**

I.      <u>Debtor Fraudulently Withheld Funds and Property from the Carlos Trust</u>

7.      At all relevant times, Howard owned, and was the sole member, manager and/or shareholder of The Motorcar Collection, LLC, a Georgia limited liability company ("<u>Motorcar Atlanta</u>"), The Motorcar Collection Miami Corp., a Florida corporation ("<u>Motorcar Miami</u>"), and Collection Miami, LLC, a Florida limited liability company ("<u>Collection Miami</u>") (collectively, "<u>Alter Egos</u>"). Motorcar Atlanta and Motorcar Miami operated as licensed motor vehicle dealers in Georgia and Florida, respectively; Howard also used Collection Miami to purchase and sell motor vehicles, but he never obtained a Florida dealer license for that entity. Howard consciously used the Alter Egos interchangeably and as instrumentalities of fraud by withholding vehicle titles

and funds due to the Carlos Trust, and secretly used those titles as collateral to illegally obtain financing for his businesses.

8.      The Carlos Trust engaged Howard to purchase and sell multiple luxury vehicles on behalf of the trust. Howard acting individually and using his various corporate entities, bought and sold vehicles for the Carlos Trust and also performed vehicle related services, including but not limited to vehicle maintenance, vehicle cleaning, vehicle upgrades and accessories, and vehicle title and registration services for the Carlos Trust's vehicles.

9.      In November 2020, Howard represented that he could locate and sell to the Carlos Trust a black Rolls Royce Phantom with a host of unique features. According to Howard, the Carlos Trust needed to "act quickly" and wire the full purchase amount to Howard's company, Motorcar Miami, because the specific vehicle was the only one available with all of the options the Carlos Trust desired.

10.      On November 20, 2020, at the request and direction of Howard, the Carlos Trust wired $563,835.00 to Motorcar Miami's bank account. *See* Exhibit 1. Howard represented that this amount was the full purchase price for a black 2020 Rolls Royce Phantom (VIN SCATT6C06LU201876) ("2020 RR Phantom"), as reflected in the written Bill of Sale between the Carlos Trust (buyer) and Motorcar Miami (seller). *See* Exhibit 2. Howard admits that his company received $563,835.00 and never returned any of the funds to the Carlos Trust, but he now wrongly claims that the purchase transaction was never completed.

11.      After wiring the full purchase price to Howard's company, the Carlos Trust took possession of the 2020 RR Phantom. Yet Howard never intended to deliver title to the Carlos Trust. Soon after the purchase, but unbeknownst to the Carlos Trust, Howard secretly applied to the Florida Department of Highway Safety and Motor Vehicles ("FL DMV") to have the title placed

in the name of Collection Miami—one of the companies owned by Howard—in direct conflict with Howard's repeated representations that title would be issued to the Carlos Trust. Collection Miami had no affiliation with the transaction, and did not receive or pay any funds in connection with the purchase. Nor did Collection Miami pay any consideration in connection with Howard illicitly placing title to the 2020 RR Phantom in the name of Collection Miami. Howard never delivered title to the 2020 RR Phantom to the Carlos Trust.

12. The Carlos Trust was forced to sue Howard and his Alter Egos in Florida state court in June 2021, as detailed in Section II below. The full scope of Howard's fraudulent scheme was uncovered during discovery in that litigation. Third party discovery revealed that Howard had orchestrated an elaborate scheme, involving multiple vehicles, in which he obtained hundreds of thousands of dollars in floor plan financing through his Alter Egos and pledged vehicles that did not belong to him or his companies as collateral for the loans, while withholding legal title and sales proceeds from the Carlos Trust.

13. As just one example of the fraudulent scheme, the true reason why Howard failed and refused to deliver free and clear title to the Carlos Trust was because he had secretly used it as collateral to obtain a $250,000 loan from a company called NextGear Capital ("NextGear") on or about March 10, 2021. To obtain the money, Howard falsified documents to depict sham transactions and made numerous misrepresentations and omissions involving the 2020 RR Phantom to make it appear that his company owned and possessed the vehicle. Howard secretly titled the vehicle in his company's name and used the title to obtain floor plan financing for his own benefit. Howard never disclosed to the Carlos Trust that he had floor planned the 2020 RR Phantom, or that he had given NextGear a security interest in the vehicle. The Carlos Trust later found out that Howard previously used the same scheme for other cars owned by the Carlos Trust.

14.     Months after the Carlos Trust paid for the 2020 RR Phantom, in early March 2021, Howard took possession of the 2020 RR Phantom under false pretenses, claiming that he would have a "black out" service performed on the vehicle. Howard never returned the vehicle to the Carlos Trust, despite Carlos's repeated demands, and never returned the $563,835.00 paid by the Carlos Trust for the vehicle.

15.     Instead, soon after taking possession of the 2020 RR Phantom, Howard secretly provided pictures of the vehicle to NextGear to demonstrate current possession of the vehicle and falsely claim that he could rightfully use it as collateral. At the same time, he also secretly signed, or arranged for the signing of, the title of the vehicle from Collection Miami to Motorcar Atlanta to provide NextGear with fraudulent proof of ownership, to the detriment of the Carlos Trust's ownership interest. Collection Miami and Motorcar Atlanta did not exchange consideration as part of this wrongful attempt to transfer title. Howard submitted additional false documents to NextGear, including a fake bill of sale to Motorcar Atlanta. In exchange for a security interest in the collateral, NextGear loaned Howard's entity, Motorcar Atlanta, $250,000.00. As of the date of the fraudulent collateralization of the Carlos Trust's car, Howard had never provided any written notice to the Carlos Trust that the 2020 RR Phantom purchase transaction was not complete because of unpaid taxes. None of the NextGear loan was ever paid to the Carlos Trust, nor was it otherwise used for the payment of taxes or for the Carlos Trust's benefit.

16.     The Carlos Trust continued to demand return of the vehicle and obtained legal counsel to assist with these efforts. Howard refused to return the 2020 RR Phantom, despite failing to invoke or comply with the requirements of Florida's Mechanics Lien procedures.  Howard never offered, nor agreed, to cooperate in arranging for the Carlos Trust to make direct payment to the Florida DMV for any sales or title transfer taxes as permitted by Florida law. As the principal of a

licensed motor vehicle dealer, Howard was well-aware that a buyer can pay such taxes directly (Howard eventually cooperated in  facilitating the Carlos Trust's direct payment of taxes in connection with another Carlos Trust car, a Ferrari, pursuant to the Consent Order). Howard withheld this information from the Carlos Trust.

17.     Howard then concocted another scheme to sell the 2020 RR Phantom a second time in order to obtain funds to pay off the NextGear loan. In May 2021, Howard purportedly sold the 2020 RR Phantom, listing Motorcar Miami as the seller on the bill of sale, to a third party that paid $450,000.00 to Collection Miami's bank account. Howard has failed to produce any documents substantiating transfer of title from Motorcar Atlanta to Motorcar Miami, or explaining Collection Miami's role in the sham transaction. Howard then used the proceeds from the second sale to pay off the NextGear loan, without ever returning any of the money taken from the Carlos Trust for the exact same vehicle months earlier. Howard admitted to using some of the proceeds to hire personal security and to pay for lawyers hired to defend Howard individually and his businesses in claims brought by the Carlos Trust. He claimed to be still personally holding some of the sale proceeds, as of June 23, 2021.

18.     Specifically as to the 2020 RR Phantom, Howard engaged in the following fraudulent conduct:

      a.  Howard represented that he could deliver a unique 2020 RR Phantom with all of the features desired by the Carlos Trust. Howard took $563,835.00 from the Carlos Trust for the purchase of the 2020 RR Phantom, but purposely converted the vehicle and the Carlos Trust payment for his own benefit, thereby failing and refusing to deliver marketable title to the Carlos Trust.

b.  Howard secretly titled the 2020 RR Phantom in the name of his entity Collection Miami, even though the Carlos Trust had paid Motorcar Miami in full for the vehicle. He later secretly transferred the title from Collection Miami to Motorcar Atlanta, and created fraudulent sale documents relating to this sham transaction, falsely indicating that Collection Miami was paid $399,500.00, even though no consideration was exchanged between Collection Miami and Motorcar Atlanta.

c.  Howard falsely represented to the Carlos Trust that he would deliver title, and gave fake excuses when confronted with the title issues involving the 2020 RR Phantom.

d.  Howard created sham transaction documents among his Alter Egos to conceal the fraudulent title scheme.

e.   The Carlos Trust later learned that the true reason for these sham transactions and refusals to deliver title was Howard's secret floor plan financing arrangement with NextGear, using the 2020 RR Phantom as collateral for his own personal benefit.

f.  Howard actively hid the true details of these and other fraudulent transactions from the Carlos Trust, and from the Court in the State Court Action, as described below, and has never returned the $563,835.00 paid by the Carlos Trust for the 2020 RR Phantom.

g.  Howard secretly sold the 2020 RR Phantom to a second buyer for $450,000.00, and never paid any of those proceeds to the Carlos Trust, nor used the proceeds for the Carlos Trust's benefit.

h.  Howard directly and personally participated in the fraudulent conduct, and the Carlos Trust justifiably relied on Howard's misrepresentations.

19.     As reflected in a credit invoice dated February 9, 2021, Howard also owes the Carlos Trust $91,910.00 from the sales of two additional luxury vehicles—a 2011 Porsche and a 2004 Mercedes Benz that Howard was supposed to sell on behalf of the Carlos Trust. *See* Exhibit 3. Howard, through his Alter Egos, sold the two vehicles at an auction, received payment (or a credit for payment) for both vehicles at some time between November 2020 and January 2021, but failed to turn over the sales proceeds due to the Carlos Trust.

20.     The balance owed by Howard to the Carlos Trust in connection with the purchase of the 2020 RR Phantom and the sales of the 2011 Porsche and 2004 Mercedes Benz is at least $655,745.00, plus interest and attorney's fees and expenses (the "Vehicle Debt").

II.     The State Court Proceedings

21.     The Carlos Trust filed a Verified Complaint against Howard and the Alter Egos in Florida state court on June 14, 2021. The complaint asserted numerous causes of action, including conversion, replevin, breach of contract, quiet title, statutory claims under Florida's Deceptive and Unfair Trade Practices Act and Florida's Motor Vehicle Repair Act, and declaratory and injunctive relief. *See Carlos v. Howard et al.*, Case No. 2021-013915-CA-01, pending in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-County, Florida, Complex Business Division ("the State Court Action").[1]

22.     One week later on June 21, 2021, the state court entered an Agreed Stipulated Final Consent Order ("Consent Order") granting injunctive relief to the Carlos Trust, requiring in part that Howard and the Alter Egos provide "any and all title, sale, transfer, or other documentation relating to the 2020 RR Phantom," and to account for the sales proceeds. *See* Exhibit 4.

---

[1] After uncovering the extent of Howard's fraudulent schemes, the Carlos Trust filed an Amended Complaint on February 2, 2022, adding claims for fraudulent misrepresentations and omissions, and for piercing the corporate veil.

23.     Despite agreeing to provide documents and information, Howard and his Alter Egos continued to obstruct the Carlos Trust's reasonable attempts to recover the 2020 RR Phantom or $563,835.00 paid for the purchase of the vehicle. The Carlos Trust was forced to file a Motion for Contempt after Howard and his Alter Egos disregarded the requirements of the Consent Order and refused to provide financial records and other critical documents related to the purported second sale of the 2020 RR Phantom to a third party buyer.

24.     After multiple hearings, including an evidentiary hearing, the state court held Howard, Motorcar Miami, and Collection Miami in civil contempt, finding that they clearly violated the Consent Order by refusing to provide access to "readily available information."

25.     The Amended Contempt Order, entered by the state court on October 22, 2021, specifically described a number of examples of Howard intentionally withholding key information. *See* Exhibit 5. It awarded the Carlos Trust attorneys' fees and costs, in an amount to be determined, and ruled that Howard and his entities were jointly and severally liable. In connection with the contempt, the Carlos Trust incurred $145,776.50 in fees and $13,943.75 in costs, for a total recoverable amount of $159,720.25 (the "Contempt Debt").

26.     Hours before a hearing to determine the amount of contempt sanctions against Howard and his Alter Egos, Howard filed a petition for relief under Chapter 7 of the Bankruptcy Code and asked for a stay of all proceedings in the State Court Action.

III.    The Bankruptcy Case

27.     On March 8, 2022, Howard filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, initiating the plenary bankruptcy case styled *In Re Howard*, Case No. 22-11866-LMI.

28.     On March 21, 2022, Howard filed a Summary of Assets and Liabilities, identifying the Alter Egos as "codebtors" on Schedule H, noting that he owned 100% of each entity. DE 13-1 at 13, 31. The summary also claimed that Motorcar Miami "is owed $106,635.00 by Chris M. Carlos, as trustee for the Chris M. Carlos Revocable Trust." *Id.*  This amount is purportedly based on a sham invoice only delivered to the Carlos Trust on or about April 12, 2021, even though it fraudulently indicates an earlier date, and despite repeated requests, Howard has failed and refused to produce a single backup document substantiating any of the items listed in the sham invoice. Further, the Debtor's Summary of Assets and Liabilities failed to mention the $91,910.00 that is admittedly due to the Carlos Trust, as an offset, or any additional amounts owed to the Carlos Trust.

IV.    <u>Howard's Wholly Owned and Controlled Companies Were Alter Egos</u>

29.     Motorcar Miami was a Florida corporation licensed in Florida by the Florida Department of Highway Safety and Motor Vehicles as a motor vehicle dealer. Howard was the only person identified in Florida's corporate records as an officer or director of the corporation.

30.     Howard established Collection Miami in September 2020 as a Florida limited liability company and dissolved the company just one year later. Although the company was not licensed as a motor vehicle dealer with the Florida Department of Highway Safety, Howard falsely held out Collection Miami as a licensed dealer. Howard testified under oath that he intended to "merge and close out The Motorcar Collection Miami Corp. and transfer it all to the Collection Miami" because they were basically the same. *See* 2004 Examination Transcript at p.19.

31.     Motorcar Atlanta was a Georgia limited liability company operating in Georgia and Florida. Howard was the Registered Agent and Authorized Person listed on the company's filings.

Motorcar Atlanta engaged in various transactions, including selling vehicles through auctions and obtaining floor plan financing on vehicles through NextGear Capital.

32.     Howard's bankruptcy filings indicate that the Alter Egos were each 100% owned by Howard.

33.     Howard exercised unilateral control over the Alter Egos, and in connection with each, he repeatedly disregarded and abused the corporate form.

34.     Despite numerous discovery requests in the State Court Action, Howard and the Alter Egos failed to produce any corporate records, ledgers, corporate resolutions, corporate minutes, recent tax returns, or other documents that would evidence observance of corporate formalities.

35.     Howard engaged in sham transactions, without consideration, between the Alter Egos. There are numerous examples of pre-petition, substantial cash withdrawals and transfers between bank accounts and credit card accounts belonging to the Alter Egos, and/or Howard's personal accounts, none of which was supported by consideration.

36.     Furthermore, in connection with the 2020 RR Phantom, Motorcar Miami is the entity that received the $563,835.00 cash payment from the Carlos Trust and is listed on the Bill of Sale. Yet Howard wrongly placed title in the name of Collection Miami and later created a fake document titled Notice of Sale and/or Bill of Sale falsely indicating a sale of the vehicle from Collection Miami to Motorcar Atlanta, even though Howard admits no consideration was exchanged between the two entities. A copy of the 2020 RR Phantom title apparently reflected a transfer to "the Motorcar Collection," and Howard used this transfer to obtain financing from NextGear. Yet when Howard purported to re-sell the car to a third party, he collected payment through Collection Miami's bank account.

11

37.     Howard also co-mingled personal funds with funds of the Alter Egos. He used corporate bank and credit card accounts for the Alter Egos to pay for personal, non-business expenditures, including but not limited to substantial payments on his American Express account, personal travel expenses for Howard and persons unaffiliated with the businesses, personal food and beverage, and personal retail shopping. The bank accounts for each of the Alter Egos also reflect thousands of dollars in cash withdrawals directly to Howard, as the only authorized signatory for the Alter Egos' accounts.  Howard never produced any documentation evidencing the actual use of this cash nor substantiating that all the cash was used for valid business purposes connected to the particular Alter Ego entity.

### COUNT I
### (EXCEPTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(2)(A) FOR MONEY OBTAINED BY FALSE PRETENSES, FALSE REPRESENTATIONS, OR ACTUAL FRAUD)

38.     The Carlos Trust sues Debtor and seeks a determination that the Vehicle Debt is non-dischargeable pursuant to section 523 of the Bankruptcy Code, and for a money judgment, and in support thereof, the Carlos Trust incorporates the allegations set forth in paragraphs 1 through 37.

39.     The total amount of money obtained by Debtor from the Carlos Trust through false pretenses, false representations, or actual fraud relating to the Vehicle Debt is at least $ 655,745.00, plus interest, attorney's fees, and expenses.

40.     On multiple occasions, Debtor failed to deliver free and clear title to vehicles purchased by the Carlos Trust, despite receiving and failing to return payment for the vehicles. Rather than delivering title to the Carlos Trust, Howard improperly used the Carlos Trust's vehicle titles to fraudulently obtain floor plan financing from a third-party lender, without ever disclosing those proceeds to the Carlos Trust. The fraudulent financing deals resulted in NextGear obtaining

a security interest in vehicles owned by the Carlos Trust, without the knowledge or consent of the Carlos Trust and without any benefit accruing to the Carlos Trust, and directly interfered with rightful delivery of title to the Carlos Trust. Howard also obtained possession of one of the vehicles from the Carlos Trust, a 2020 Rolls Royce Phantom, through false pretenses as part of the fraudulent scheme.

41.     Under section 523(a)(2)(A) of the Bankruptcy Code, "[a] discharge . . . does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."

42.     Debtor injured the Carlos Trust by engaging in an elaborate, fraudulent scheme and making false representations to deprive the Carlos Trust of the full use and enjoyment of its property and money relating to multiple vehicles.

43.     The Carlos Trust reasonably and justifiably relied on Howard's misrepresentations regarding the status of vehicle titles and reasonably believed it was the lawful owner of vehicles purchased through Howard and funds derived from the sales of vehicles sold by Howard on behalf of the Carlos Trust. Debtor took detailed, active steps to hide the fraudulent scheme from the Carlos Trust.

44.     Debtor's actions were with full knowledge of the fraudulent scheme and with knowledge of the falsity of representations in connection with the scheme, or with reckless disregard for the truth or falsity of the representations.

45.     Debtor's fraud has resulted in the loss of property to the Carlos Trust.

46.     Therefore, the Vehicle Debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) because it is a debt for money obtained by false pretenses, false representations, or actual fraud.

Wherefore, the Carlos Trust respectfully requests that this Court enter judgment in its favor of and against Defendant determining that the Vehicle Debt is non-dischargeable, and that the Carlos Trust is entitled to a money judgment in an amount not less than $655,745.00, plus pre-judgment and post-judgment interest and attorneys' fees and expenses, and any other and further relief that this Court deems just and proper.

### COUNT II
### (EXCEPTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(4) FOR FIDUCIARY DEBTS, EMBEZZLEMENT, OR LARCENY )

47.     The Carlos Trust sues Debtor and seeks a determination that the Vehicle Debt is non-dischargeable pursuant to section 523 of the Bankruptcy Code, and for a money judgment, and in support thereof, the Carlos Trust incorporates the allegations set forth in paragraphs 1 through 37.

48.     Debtor is indebted to the Carlos Trust in connection with the Vehicle Debt in an amount equal to at least $ 655,745.00, plus interest and attorney's fees and expenses.

49.     Under section 523(a)(4) of the Bankruptcy Code, "[a] discharge . . . does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

50.     The Carlos Trust purchased a 2020 Rolls Royce Phantom from Debtor through Debtor's entity The Motorcar Collection Miami Corp. in November 2020 for $563,835.00.  In March 2021, the Carlos Trust entrusted the vehicle to Debtor to obtain services described by Debtor as a "black out," in which the chrome would be coated black. Debtor told Carlos the service

would take 10 days, but the Carlos Trust never saw the 2020 RR Phantom again. Instead, Debtor sold the 2020 RR Phantom to a third-party dealer for $450,000.00, and never returned any of the purchase price previously paid by the Carlos Trust, and never forwarded any of the NextGear loan proceeds or the $450,000.00 sales proceeds to the Carlos Trust.

51.    Debtor also received funds in connection with the sale of two cars owned by the Carlos Trust. Debtor was required to turn those funds over to the Carlos Trust, but has repeatedly refused to do so.

52.    Debtor's actions constitute embezzlement because Debtor fraudulently appropriated property that was entrusted to him by the Carlos Trust for Debtor's own benefit. Alternatively, the actions constitute larceny because Debtor fraudulently and wrongfully took the property with the intent to convert it to his own use without consent.

53.    The disputed amounts were deposited into bank accounts accessible only by Debtor.

54.    Debtor actively disbursed the funds for his personal benefit, without remitting them to the Carlos Trust.

55.    Therefore, the Vehicle Debt is non-dischargeable under 11 U.S.C. § 523(a)(4) because it  resulted from embezzlement or larceny.

Wherefore, the Carlos Trust respectfully requests that this Court enter judgment in its favor of and against Defendant determining that the Vehicle Debt is non-dischargeable, and that the Carlos Trust is entitled to a money judgment in an amount not less than $655,745.00, plus pre-judgment and post-judgment interest and attorneys' fees and expenses, and any other and further relief that this Court deems just and proper.

## COUNT III
### (EXCEPTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(6) FOR WILLFUL AND MALICIOUS INJURY)

56.     The Carlos Trust sues Debtor and seeks a determination that the Vehicle Debt is non-dischargeable pursuant to section 523 of the Bankruptcy Code, and for a money judgment, and in support thereof, the Carlos Trust incorporates the allegations set forth in paragraphs 1 through 37.

57.     Debtor is indebted to the Carlos Trust in connection with the Vehicle Debt in an amount equal to at least $ 655,745.00, plus interest and attorney's fees and expenses, for the theft of the Carlos Trust cars and/or sales proceeds.

58.     Under section 523(a)(6) of the Bankruptcy Code, "[a] discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

59.     Debtor willfully and maliciously injured the Carlos Trust by, among other things, receiving funds from the Carlos Trust in the conduct of business on behalf of the Trust, failing to use the funds for their intended purposes, converting Trust property for his own use, and selling Trust property without permission. Debtor caused deliberate injury that prevented the Carlos Trust from recovering a 2020 Rolls Royce Phantom for which it paid $563,835.00. He purposely sold the vehicle to a third-party buyer without legal justification, and actively obstructed the Carlos Trust's efforts to locate and regain possession of the vehicle.

60.     Debtor intended to inflict injury on the Carlos Trust or believed that injury was substantially likely to occur because of Debtor's actions.

61.     Debtor's conduct was wrongful, intentional, necessarily caused injury to the Carlos Trust, and was done without just cause.

62.     Therefore, the Vehicle Debt is non-dischargeable under 11 U.S.C. § 523(a)(6) because it is a debt for willful and malicious injury to another entity or property of another entity.

Wherefore, the Carlos Trust respectfully requests that this Court enter judgment in its favor and against Defendant determining that the Vehicle Debt is non-dischargeable, and that the Carlos Trust is entitled to a money judgment in an amount of not less than $655,745.00, plus pre-judgment and post-judgment interest and attorney's fees and expenses, in connection with the Carlos Trust vehicles and any other and further relief that this Court deems just and proper.

### COUNT IV
### (EXCEPTION TO DISCHARGE UNDER 11 U.S.C. § 523(a)(6) FOR WILLFUL AND MALICIOUS INJURY)

63.     The Carlos Trust sues Debtor and seeks a determination that the award of contempt fees and costs in the State Court Action is non-dischargeable pursuant to section 523 of the Bankruptcy Code, and for a money judgment, and in support thereof, the Carlos Trust incorporates the allegations set forth in paragraphs 1 through 37.

64.     Debtor is indebted to the Carlos Trust in an amount equal to at least $159,720.25 for the attorneys' fees and costs authorized under the Amended Contempt Order in the State Court Action (the "Contempt Debt").

65.     On June 21, 2021, the state court entered an Agreed Stipulated Final Consent Order ("Consent Order") granting injunctive relief to the Carlos Trust, requiring in part that Howard and the Alter Egos provide "any and all title, sale, transfer or other documentation relating to the 2020 RR Phantom," and to account for receipt and transfer, and the current location, or any sales proceeds. The Consent Order also mandated that Howard execute a statement under penalty of perjury describing, among other things, "the circumstances of any sales or attempted sale of the 2020 RR Phantom," and the location/disposition of the proceeds of sale.

66.     Howard willfully and maliciously refused to comply with the Consent Order and other orders entered by the state court over the span of several months.

67.     By way of example, none of the documents or records produced by Howard (and none of the statements under oath) describe the truth regarding the use of title to the 2020 RR Phantom for obtaining secret and unauthorized financing from NextGear, and that the need to repay the loan was the primary reason Howard (a) refused to deliver title upon demand in March 2021; (b) refused to return possession of the 2020 RR Phantom in March and April of 2021 and thereafter; and (c) secretly sold the 2020 RR Phantom to a third party in May 2021, paying off the NextGear loan and retaining all of the proceeds of sale.

68.     After multiple hearings, including a multi-day evidentiary hearing, the state court held Howard, Motorcar Miami, and Collection Miami in civil contempt, specifically rejecting their argument that they did not intend to violate the Consent Order, noting that "[a] mere disclaimer by the [Defendants] that [their] conduct was willful or intentional does not deprive the court of the power to declare it to be contempt…", citing *In re* Weinstein, 518 So. 2d 1370, 1374 (Fla. 4th DCA 1988).  The Amended Contempt Order, entered October 22, 2021, described a number of examples of Howard withholding information during testimony, until confronted with contrary evidence, and finding that Howard and his entities clearly violated the Agreed Order by refusing to provide "readily available information."

69.     The Amended Contempt Order awarded the Carlos Trust its attorneys' fees and costs in connection with the contempt motion and securing compliance with the Consent Order, in an amount to be determined, plus a daily monetary fine of $500, starting September 14, 2021.

70.     The Carlos Trust submitted detailed affidavits, including from its expert, quantifying the fees and costs incurred as a result of Howard's refusal to comply with the Consent

18

Order. The issues relating to the quantity of fees and costs was fully briefed in the State Court Action.

71.    Hours before a March 8, 2022 hearing to quantify the amount of fees and costs to awarded, Howard filed a petition for relief under Chapter 7 of the Bankruptcy Code and notified the state court of the automatic stay of all proceedings.

72.    The amount of recoverable fees to be awarded to the Carlos Trust is $145,776.50, and the amount of recoverable costs incurred is $13,943.75, for a total of $159,720.25.

73.    Under section 523(a)(6) of the Bankruptcy Code, "[a] discharge . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

74.    Debtor willfully and maliciously injured the Carlos Trust by, among other things, intentionally refusing to comply with the Consent Order and refusing to provide information about the transactions involving the Carlos Trust vehicles, the sales proceeds and loan proceeds, and an accounting for the dissipation or location of those funds due to the Carlos Trust.  By willfully and intentionally withholding information, Debtor caused the Carlos Trust to incur substantial attorneys' fees and costs in connection with the motion for contempt and efforts to secure compliance with the state court Consent Order.

75.    Debtor intended to inflict injury on the Carlos Trust or believed that injury was substantially likely to occur because of Debtor's actions.

76.    Debtor's conduct was wrongful, intentional, necessarily caused injury to the Carlos Trust, and was done without just cause.

77.    Therefore, the Contempt Debt is non-dischargeable under 11 U.S.C. § 523(a)(6) because it is a debt for willful and malicious injury to another entity or property of another entity.

Wherefore, the Carlos Trust respectfully requests that this Court enter judgment in its favor and against Defendant determining that the Contempt Debt is non-dischargeable and that the Carlos Trust is entitled to a money judgment in an amount of not less than $159,720.25, for the fees and costs awarded under the Amended Contempt Order, and other sanctions; and any other and further relief that this Court deems just and proper.

## COUNT V
## PIERCING THE CORPORATE VEIL

78.     The Carlos Trust sues Debtor and seeks a determination that the Vehicle Debt and Contempt Debt are non-dischargeable pursuant to section 523 of the Bankruptcy Code, and in support thereof, the Carlos Trust incorporates the allegations set forth in paragraphs 1 through 37.

79.     At all relevant times, Debtor was the 100% owner, and the sole member or shareholder of Motorcar Miami, Motorcar Atlanta,[2] and Collection Miami (collectively, the "Alter Egos").

80.     Debtor dominated and controlled the Alter Egos to such an extent that they maintained no meaningful separate existence from Debtor.

81.     Debtor has failed to observe proper corporate formalities in his operation of the Alter Egos. He failed to keep or maintain normal financial records, and financial records required by law.  He has commingled his personal and financial affairs with those of the Alter Egos, such that it would be impossible or wasteful to attempt to separate the individual from the corporate form.

---

[2] All references to Motorcar Atlanta are solely for purposes of the alter ego claims against the Debtor, individually, and the Carlos Trust disclaims any intent or attempt to assert a claim against Motorcar Atlanta and to not comply with the automatic stay provisions relating to Motorcar Atlanta's June 22, 2021 bankruptcy filing (not disclosed until September 17, 2021) in the Northern District of Georgia, Case No. 21-24734-JWC.

82.     Debtor used the corporate form for improper purposes, including transferring funds between and among bank accounts in the names of the Alter Egos with no exchange of any consideration, falsifying purchases of vehicles by and among the Alter Egos, fraudulently obtaining loans in connection with such sales, and falsifying documents in connection with the fraud.

83.     Debtor's fraudulent or improper use of the corporate form caused injury to the Carlos Trust because Howard used funds obtained from the Carlos Trust to perpetrate this fraud without the Carlos Trust's knowledge, and dissipated proceeds of sales from cars belonging to the Carlos Trust, without accounting for such funds or paying amounts due to the Carlos Trust.

Wherefore, the Carlos Trust respectfully requests the Court to enter a judgment against Debtor Howard, pierce the corporate veil of the Alter Egos, and declare that the Debtor be held liable to the Carlos Trust for the Debtor's and the Alter Egos' wrongdoing.

Dated: June 21, 2022                    Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
 ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:    (305) 789-3200
By:    /s/ Jenea M. Reed
DREW M. DILLWORTH
ddillworth@stearnsweaver.com
Florida Bar No. 167835
DARRELL PAYNE
dpayne@stearnsweaver.com
Florida Bar Number 773300
JENEA M. REED
jreed@stearnsweaver.com
Florida Bar No. 84599

# EXHIBIT 1

**CLIENT STATEMENT** | For the Period November 1-30, 2020

# Morgan Stanley
### PRIVATE WEALTH MANAGEMENT

Page 7 of 10

## Account Detail

Active Assets Account

CHRIS M CARLOS TTEE
CHRIS M CARLOS U/A DTD 05/28/2008

### CASH FLOW ACTIVITY BY DATE (CONTINUED)

| Activity Date | Settlement Date | Activity Type | Description | Comments | Quantity | Price | Credits/(Debits) |
|---|---|---|---|---|---|---|---|
| 11/20 | | Funds Transferred | WIRED FUNDS SENT | BENE: THE MOTORCAR COLLECTION ACCT: XXXXXXXX5140 | | | (563,835.00) |

# EXHIBIT 2

**BILL OF SALE**

DATE: 11/20/2020    STOCK #: P201876

| BUYER INFORMATION: | SELLER INFORMATION: |
|---|---|
| CHRIS MICHAEL CARLOS REV. TRUST<br>4212 REGANCY CT NW<br>ATLANTA, GA 30327    COUNTY: FULTON<br>HOME:    CELL:    WORK:<br>D.L./STATE ID #:    STATE: GA    EXP. DATE:<br>D.O.B.: | **THE MOTORCAR COLLECTION MIAMI<br>7611 NW 7TH AVE, UNIT 105<br>MIAMI, FL 33150<br>305-905-2111**<br><br>SALESPERSON: |

**VEHICLE INFORMATION:**

| YEAR: 2020 | COLOR 1: BLACK | VIN: SCATT6C06LU201876 | STOCK: P201876 |
|---|---|---|---|
| MAKE: ROLLS-ROYCE | COLOR 2: | STYLE: | CYL: 12 |
| MODEL: PHANTOM | BODY: 4DR | MILEAGE: 121 | TRANS: AUTO |

☐ If this box is checked, the vehicle that you are purchasing has been licensed, registered, or used as a taxicab, police vehicle, or short-term-lease vehicle, is a vehicle that is rebuilt or assembled from parts, is a kit car, glider kit, replica, street rod, custom vehicle, has been repurchased by a manufacturer under Florida's Lemon Law (Fla. Stat. ch. 681), or is a flood vehicle: _____ (indicate prior uses, brands or types)

| TRADE-IN INFORMATION: | | SETTLEMENT | |
|---|---|---|---|
| YEAR:    COLOR: | | | |
| MAKE:    MILEAGE: | | VEHICLE PRICE | 562,840.00 |
| MODEL:    BODY: | | Dealer Service Fee **[see NOTE 1]** | 995.00 |
| VIN: | | SUBTOTAL | 563,835.00 |
| BALANCE OWED TO: | | Sales Tax: | N/A |
| | | Title Fee: | 0.00 |
| BALANCE OWED: $ 0.00    GOOD THROUGH: | | License Fee: | 0.00 |
| ALLOWANCE: $ 0.00    QUOTED BY: | | Registration Fee: | 0.00 |
| | | Transfer Fee: | 0.00 |
| INSURANCE INFORMATION: | | Temp Tag Fee: | 0.00 |
| COMPANY: | | | |
| AGENT: | | | |
| PHONE:    POLICY #: | | Payoff on Trade-in: | N/A |
| LIEN HOLDER INFORMATION: | | | |
| COMPANY: | | | |
| STREET: | | | |
| CITY, STATE, ZIP: | | | |
| | | | |
| REMARKS: | | | |
| | | | |
| | | | |
| | | TOTAL DUE | 563,835.00 |

| | | | |
|---|---|---|---|
| **NOTE 1:** This charge represents costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale. | CREDIT | TRADE-IN ALLOWANCE | N/A |
| | | DEPOSIT | N/A |
| **WARRANTY DISCLAIMER:** | | DOWN PAYMENT | 563,835.00 |
| **Unless Seller provides a written warranty, or enters into a service contract within 90 days from the date of this contract, this vehicle is being sold "AS IS – WITH ALL FAULTS" and Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.** Seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of the vehicle and the related products and services. | | TOTAL CREDIT | 563,835.00 |
| | ☒ Cash ☐ Finance    BALANCE DUE | | 0.00 |
| | If financed, please see your installment sales contract for information about finance charge, insurance, and terms of payment (other than cash). | | |

**CONTRACTUAL DISCLOSURE STATEMENT** (USED VEHICLES ONLY) The information you see on the window form is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

Buyer hereby declares that he/she is of legal age to transact business and that no unfair inducement has been made by Seller. This agreement and the related documents that Buyer signs contemporaneously with this agreement, including any retail installment contract, contain the entire agreement between Buyer and Seller and cancels and supersedes any prior agreement including oral agreements relating to the sale of the motor vehicle. Any change to this agreement must be in writing and Seller must sign it.

X _____  11/20/20    X _____  11/20/20    X _____ _____
Accepted by Authorized Representative of Seller    Date    Buyer    Date    Co-Buyer    Date

FZ-FL-BOS rev. 05/19    ©2019 Frazer Computing, Inc.

ABH 00052

# EXHIBIT 3

# Invoice

**THE MOTORCAR COLLECTION MIAMI**

The Motorcar Collection Miami

305-905-2111

| | |
|---|---|
| Date: | 02/09/2021 |
| Invoice No.: | 344213 |
| Due Date: | 03/11/2021 |

**Bill To:**
CHRIS CARLOS
4212 Regenacy Ct NW
Atlanta Ga 30327

| Qty | Item | Description | Unit Price | Total |
|-----|------|-------------|------------|-------|
| 1 | SOLD | 2011 Turbo S SOLD at Auction | -$83,005.00 | -$83,005.00 |
| 1 | SOLD | 2004 E55 Sold At Auction | -$8,905.00 | -$8,905.00 |

|  |  |
|---|---|
| **Total** | -$91,910.00 |
| **Balance Due** | -$91,910.00 |

Please contact us for more information about payment options.

Thank you for your business.

ABH 00019

# EXHIBIT 4

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: <u>2021-013915-CA-01</u>
SECTION: <u>CA44</u>
JUDGE: <u>William Thomas</u>

**CHRIS M. CARLOS, AS TRUSTEE FOR THE CARLOS TRUST**
Plaintiff(s)

vs.

**AUSTIN B. HOWARD et al**
Defendant(s)

_____/

## <u>AGREED STIPULATED FINAL CONSENT ORDER GRANTING INJUNCTIVE RELIEF TO PLAINTIFF CARLOS TRUST</u>

THIS MATTER is before the court after hearing on June 21, 2021, upon the stipulation of the parties, regarding the motion of plaintiff Chris M. Carlos as trustee of the Chris M. Carlos Revocable Trust (the "Carlos Trust"), pursuant to Florida Rule of Civil Procedure 1.610, for an *ex parte* temporary injunction, filed June 14, 2021, against Defendants Austin Howard ("Howard"), The Motorcar Collection Miami Corp. ("Motorcar Miami"), and the Collection Miami, LLC ("Collection Miami"). The court has considered the motion, the supporting Carlos Declaration, the verified complaint filed in this matter, and the parties' stipulation to the terms of this final consent order.

It appears that the parties have agreed that the Carlos Trust is the rightful owner of the personal property described in the motion, verified complaint, and below ("Carlos Property") (except as indicated below), and is entitled to immediate turn over and delivery of the Carlos Property. The defendants have coordinated with the plaintiff for the delivery of the keys/fobs in the possession of their former attorney, Peter Gonzalez, with that delivery scheduled to have taken place at 9:30 a.m. on Monday, June 21, 2021.

Plaintiff has satisfied each of the four prerequisites for a preliminary injunction, pursuant to *Cosmic Corp. v. Miami-Dade County,* 706 So. 2d 347, 348 (Fla. 3d DCA 1998), for the reasons set forth in detail in the motion, supporting declaration, and the verified complaint, and pursuant to the parties' stipulation. The parties also stipulate to this final consent order.

Defendants have actual notice of the motion, have agreed to accept service of process, and agree that service of process was effective and accomplished on all defendants, deemed effective as of June 21, 2021. Defendants are represented by counsel, Josh Liszt, Esq.

**Public Interest.** The public interest will be served because of the importance of preserving trust assets and protecting the Carlos Trust's interest in its property.

The court is otherwise fully advised in the premises. Therefore, it is

ORDERED and ADJUDGED that the motion for a preliminary injunction is GRANTED, as follows, with a final consent order as to the items detailed below. Defendants Austin Howard, The Motorcar Collection Miami Corp., and Collection Miami, LLC are:

1. enjoined from selling or transferring title to the Phantom (specifically, a 2020 Rolls Royce Phantom, VIN Number SCATT6C06LU201876 ("2020 RR Phantom")) or the Ferrari (specifically, a 2019 Ferrari Spider, VIN Number: ZFF80AMA6K0242131 ("2019 Ferrari")), or moving or attempting to transport or move either vehicle, to any person or entity other than the Carlos Trust;

2. ordered to immediately deliver to defendants' counsel, Josh Liszt, Esq., the original of the title for the 2019 Ferrari, fully executed for transfer of title in the name of "The Chris M. Carlos Revocable Trust dated May 28, 2008, as amended and restated," to be held in escrow by Josh Liszt, pending coordination and payment by the Carlos Trust of any state sales tax due arising from the Carlos Trust's purchase of the 2019 Ferrari, on November 4, 2020, either directly to the Florida Department of Revenue or through some method agreeable to the Carlos Trust in its sole discretion. For the avoidance of doubt, the Carlos Trust will not be required to pay sales tax for the 2019 Ferrari directly to any of the defendants, but may in its sole discretion agree to make payment through the trust account of Josh Liszt, Esq.

The defendants will cooperate in transferring title to the 2019 Ferrari, by executing any additional documentation or taking such other action to immediately cause title, tag, and registration to be issued in the name of the Carlos Trust, as set forth above.  The defendants will provide documentation sufficient to satisfy the Carlos Trust, in its sole discretion, as to the fact that sales taxes are actually due and the correct computation of same.  For the avoidance of doubt, the Carlos Trust is the rightful owner of the 2019 Ferrari.

3. ordered to deliver, within three (3) days of this order, to defendants' counsel Josh Liszt, Esq., the underlined original title to the 2020 RR Phantom, if such title is in any of the defendants' possession, custody, or control.  If such title is not in the defendants' possession, custody, or control, the defendants will make all reasonable efforts to secure return and possession of the title, including recovering such title from any purported purchaser of the 2020 RR Phantom, by returning any funds actually received in connection with any prior attempt to sell the 2020 RR Phantom; and upon securing possession of the title, the defendants shall immediately deliver it to defendants' counsel Josh Liszt, Esq.  The 2020 RR Phantom title will be held in escrow, pending resolution of any issues regarding transfer of title to the Carlos Trust, including payment of any sales tax actually due pursuant to a procedure consistent with the procedure for the 2019 Ferrari, described above, and resolution of any competing claims to title by any purported third party buyer, subject to further order by this Court, including any agreed order by the parties regarding the transfer of title; and

4. ordered to deliver to counsel for the Carlos Trust, within three (3) days of this order, via email or other mutually agreeable method, the following:

1. copies of any and all title, sale, transfer or other documentation relating to the 2020 RR Phantom or the 2019 Ferrari, including but not limited all titles received, all titles transferred, all transfer documentation, all applications for title, all purchase/sale agreements, all license plates/tag and applications for same, all registrations and applications for same, all tax payments and evidence of same, all records regarding the purchase or sale required to be maintained as a registered motor vehicle dealer in either Florida or Georgia; and all title/transfer documentation regarding the 12/15/20 title for the 2020 RR Phantom issued in the name of Collection Miami, LLC;

1. copies of any and all documents relating to any purported sale of the 2020 RR Phantom by any of the defendants, including but not limited to purchase/sale agreements, evidence of receipt of payment, account statements confirming

receipt of payment, financial records reflecting any transfer of any proceeds of sale and financial records identifying the current location of any such proceeds of sale, documentation demonstrating the defendants' purported right to sell the 2020 RR Phantom, and documentation demonstrating if the purported buyer is a bona-fide purchaser for value;

1. a statement signed by Austin B. Howard, under penalty of perjury, describing the circumstances of any sale or attempted sale of the 2020 RR Phantom (after purchase by the Carlos Trust on or about November 20, 2020), including identifying the current location of the vehicle, the total funds received in connection with any attempted sale, the current location of the proceeds of sale and/or the disposition of any proceeds of sale.

Defendant Howard is further: (1) enjoined from using or sharing any keys, fobs, access cards to the Oceana Condominium owned by the Carlos Trust, and any vehicle keys, whether for the Ferrari or Phantom; and (2) ordered to deliver, within three (3) days of this order to counsel for the Carlos Trust (if not already delivered to Counsel for the Carlos Trust before the June 21, 2021 hearing before this Court) any keys, fobs, access cards belonging to the Carlos Trust, whether related to the Oceana Condo, the 2019 Ferrari, the 2020 RR Phantom, and the Mercedes. This order is binding on those entities identified above, in accordance with Rule 1.610(c). For the avoidance of doubt, the Carlos Trust is the rightful owner of the keys, fobs, and access cards relating to the Oceana Condo, the 2019 Ferrari, and the Mercedes.

Because the parties have stipulated and agreed to this consent order regarding the items identified above, and the parties have stipulated and agreed that this final injunction is not wrongful under Rule 1.610(b), no posting of any bond shall be required. This is a final order as to possession and ownership of the items so enumerated above, but otherwise does not constitute a final determination of the other claims asserted in the verified complaint.

This Court may enforce the terms of this stipulated consent order, including through use of the Court's inherent authority of contempt, and award attorneys' fees and costs to any prevailing party in connection with any efforts to enforce the terms of this stipulated consent order.

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this <u>21st day of June, 2021</u>.



<u>2021-013915-CA-01 06-21-2021 3:23 PM</u>
Hon. William Thomas

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**
Darrell W. Payne, dpayne@stearnsweaver.com
Darrell W. Payne, cveguilla@stearnsweaver.com
Jenea M. Reed, jreed@stearnsweaver.com
Jenea M. Reed, mfigueras@stearnsweaver.com
Joshua M. Liszt, josh@gllaw.center.com

**Physically Served:**

# EXHIBIT 5

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL
CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA**

CASE NO: 2021-013915-CA-01
SECTION: CA44
JUDGE: William Thomas

**CHRIS M. CARLOS, AS TRUSTEE FOR THE CARLOS TRUST**
Plaintiff(s)

vs.

**AUSTIN B. HOWARD et al**
Defendant(s)

_____/

## AMENDED ORDER FINDING DEFENDANTS IN CIVIL CONTEMPT

THIS MATTER is before the Court on plaintiff's Motion for Contempt and to Enforce Agreed Stipulated Final Consent Order ("Contempt Motion"), this Court's Order to Show Cause Why Defendants Should Not Be Held in Contempt of Court ("Order to Show Cause"), and this Court's Order Setting Final Deadline for Defendants to Produce Records and Information.[1] The Court has reviewed the Contempt Motion and the related briefing and evidence, including the Interim Report from the Court-appointed Neutral, Stuart I. Grossman, Esq., and heard arguments of counsel, witness testimony, and comments from the Neutral, and is otherwise fully advised, and therefore makes the following findings of fact and conclusions of law that support holding the defendants in civil contempt.

### Factual Findings

This case concerns, among other things, defendants' alleged attempt to sell a 2020 Rolls Royce Phantom vehicle ("2020 RR Phantom") to two different purchasers within a matter of months. As alleged in Plaintiff's verified complaint, and confirmed by the testimony of defendant Austin Howard and the evidence submitted in connection with the Contempt Motion,

Plaintiff paid Defendant The Motorcar Collection Miami Corp. ("Motorcar Miami") $563,835.00 for the 2020 RR Phantom on November 20, 2020. In May 2021, Defendants purported to sell the same 2020 RR Phantom to a third-party entity located in Illinois, and received $450,000.00 from that transaction, wired to the account of Defendant Collection Miami, LLC ("Collection Miami"). Defendants' basis for this alleged sale is disputed, but has no bearing on the Court's finding that the Defendants should be held in contempt.

This Court, pursuant to the agreement of the parties, entered an Agreed Stipulated Final Consent Order Granting Injunctive Relief to Plaintiff Carlos Trust ("the Consent Order") on June 21, 2021, which required Defendants to deliver documents and information to Plaintiff related to the two purported sales of the 2020 RR Phantom. The Consent Order specified that, by June 24, 2021, Defendants were required to deliver the following specific documents and information to Plaintiff's counsel:

1. copies of any and all title, sale, transfer or other documentation relating to the 2020 RR Phantom . . . including but not limited all titles received, all titles transferred, all transfer documentation, all applications for title, all purchase/sale agreements, all license plates/tag and applications for same, all registrations and applications for same, all tax payments and evidence of same, all records regarding the purchase or sale required to be maintained as a registered motor vehicle dealer in either Florida or Georgia; and all title/transfer documentation regarding the 12/15/20 title for the 2020 RR Phantom issued in the name of Collection Miami, LLC;

1. copies of any and all documents relating to any purported sale of the 2020 RR Phantom by any of the defendants, including but not limited to purchase/sale agreements, evidence of receipt of payment, account statements confirming receipt of payment, financial records reflecting any transfer of any proceeds of sale and financial records identifying the current location of any such proceeds of sale, documentation demonstrating the defendants' purported right to sell the 2020 RR Phantom, and documentation demonstrating if the purported buyer is a bona-fide purchaser for value;

1. a statement signed by Austin B. Howard, under penalty of perjury, describing the circumstances of any sale or attempted sale of the 2020 RR Phantom (after purchase by the Carlos Trust on or about November 20, 2020), including

identifying the current location of the vehicle, the total funds received in connection with any attempted sale, the current location of the proceeds of sale and/or the disposition of any proceeds of sale.

Defendants failed to fully comply. Although Defendants belatedly provided certain limited documents and finally provided some information during testimony during the second day of the contempt hearing, there is specific bank account and other account information that has not been produced and defendants have failed to adequately describe under oath the circumstances of each transaction involving the 2020 RR Phantom, and to adequately explain under oath what happened to the proceeds from the alleged sales of the 2020 RR Phantom.

The Court issued an Order to Show Cause requiring compliance by July 27, 2021, appointed a Neutral on July 30, 2021 to assist with identifying and turning over the required information, and issued another Order Setting Final Deadline requiring compliance by August 27, 2021. These efforts were unsuccessful at achieving defendants' full compliance. The Court held an evidentiary hearing on September 9 and 10, 2021, at which both Plaintiff and Defendants presented evidence. The Court also heard testimony from defendant Austin Howard.

The Court finds that Defendants are in violation of the Consent Order, the Order to Show Cause, and the Order Setting Final Deadline. Defendants have access to documents and information that they have failed to provide, which clearly violates the Consent Order. Even during the contempt hearing, defendants' counsel initially stated that Howard had no knowledge of two bank accounts about which the Neutral had specifically inquired. Yet, Howard subsequently provided specific testimony related to those bank accounts, both of which belong to entities affiliated with Howard that are also defendants in this action. Defendants represented to the Neutral that Howard maintained no personal bank accounts. It was only after Plaintiff presented evidence about one of Howard's bank accounts that Howard now claimed he was confused about whether personal bank account statements had been requested. Howard's testimony is not credible. Defendants also failed to provide readily available information, such

as American Express statements. The only way to obtain full compliance is to hold the defendants in contempt and impose sanctions. Sanctions are in no way intended to be punitive, but rather to compel compliance.

Conclusions of Law

The Court is vested with inherent authority to impose a range of sanctions for civil contempt, including but not limited to filing of reports, monetary fines, and the delivery of certain assets. *Parisi v. Broward Cnty.*, 769 So. 2d 359, 365 (Fla. 2000). An award of attorneys' fees is also appropriate as a compensatory sanction for the contempt. *See, e.g., Alpha 2001, Inc./Omega 2011 LLC v. Bookstein*, 933 So. 2d 731, 732 (Fla. 4th DCA 2006). The Consent Order issued by this Court was clear and unequivocal, and defendants were afforded notice and an opportunity to be heard before the Court imposed any sanctions. The defendants' argument that they did not intend to violate the Consent Order does absolve them from this contempt finding because "[a] mere disclaimer by the [Defendants] that [their] conduct was not willful or intentional does not deprive the court of the power to declare it to be contempt . . ." *In re Weinstein*, 518 So. 2d 1370, 1374 (Fla. 4th DCA 1988).

Relief

Based on the above findings of fact and conclusions of law, it is hereby ORDERED and ADJUDGED that:

1. Defendants Austin B. Howard, The Motorcar Collection Miami Corp., and Collection Miami, LLC are held in civil contempt for violating the June 21, 2021 Agreed Stipulated Final Consent Order Granting Injunctive Relief to Plaintiff Carlos Trust, the July 23 Order to Show Cause, and the August 29, 2021 Order Setting Final Deadline for Defendants to Produce Records and Information.
2. Defendants, jointly and severally, are assessed a fine of $500 per day as a sanction for contempt, which may be purged if Defendants produce all the documents and all the information described in the Consent Order, including but not limited to a detailed statement, sworn under penalty of perjury, describing the particular circumstances of each of the sales or transactions involving the 2020 RR

Phantom, and identifying particularly the disposition of all sales proceeds and the current location of any remaining proceeds. If defendants fully comply by September 17, 2021, the Court will not assess any monetary fine. If defendants fail to comply by September 17, 2021, the daily monetary fine will accrue from Friday, September 10, 2021, through the date of compliance. Defendants will be jointly and severally liable for any monetary fine.

3. If defendants remain noncompliant after September 17, 2021, the Court will have another hearing to determine whether or not the defendants' pleadings should be stricken.

4. The Court finds that a compensatory award of attorney's fees and costs is appropriate, consistent with the Consent Order and governing case law, to compensate Plaintiff for fees and costs expended related to bringing the motion for contempt and pursuing the enforcement of the Consent Order, at hearing and otherwise. The Court will schedule a hearing to determine the appropriate amount of fees and costs to be assessed, based on evidence of the amount expended by Plaintiff. Defendants will be jointly and severally liable for the amount determined by the Court. Although the daily fine referenced above can be purged by full compliance, the award of fees and costs will remain as a compensatory sanction.

5. The Court will confer with the Neutral to determine whether there has been full compliance by the defendants.

6. The Court expressly reserves jurisdiction to enforce the terms of this Order and to enter such further orders as may be necessary in the future.

---

[1] This order amends the Court's contempt order dated September 14, 2021, to remove Defendant The Motorcar Collection, LLC ("Motorcar Atlanta") from the finding of contempt. The parties had inadvertently reviewed and submitted to the Court an initial order that should not have included that defendant. As used in this contempt order, "Defendants" refers only to Defendants Austin Brode Howard ("Howard"), The Motorcar Collection Miami Corp. ("Motorcar Miami") Collection Miami, LLC ("Collection Miami").

**DONE** and **ORDERED** in Chambers at Miami-Dade County, Florida on this 22nd day of October, 2021.

2021-013915-CA-01 10-22-2021 9:54 AM

2021-013915-CA-01 10-22-2021 9:54 AM
Hon. William Thomas

**CIRCUIT COURT JUDGE**
Electronically Signed

No Further Judicial Action Required on **THIS MOTION**

CLERK TO **RECLOSE** CASE IF POST JUDGMENT

**Electronically Served:**

Annabel C. Majewski, annabel@wassonandassociates.com

Annabel C. Majewski, e-Service@wassonandassociates.com

Austin Howard, brode@themotorcarcolllection.com

Collection Miami, LLC, brode@themotorcarcollection.com

Darrell W. Payne, dpayne@stearnsweaver.com

Darrell W. Payne, cveguilla@stearnsweaver.com

Harry A. Payton, payton@payton-law.com

Harry A. Payton, smorejon@payton-law.com

Harry A. Payton, smohorcic@payton-law.com

Jenea M. Reed, jreed@stearnsweaver.com

Jenea M. Reed, mfigueras@stearnsweaver.com

Jenea Reed, jreed@stearnsweaver.com

Jenea Reed, dangel@stearnsweaver.com

Jenea Reed, mfigueras@stearnsweaver.com

Joshua Mark Liszt, Esq., josh@gllawcenter.com

Roy D Wasson, e-service@wassonandassociates.com

Roy D Wasson, roy@wassonandassociates.com

Stuart I. Grossman, sig@lklsg.com

Stuart I. Grossman, acd@lklsg.com

Tajhna Handal, thandal@stearnsweaver.com

The Motor Car Collection Miami Corp., brode@themotorcarcollection.com

The Motor Car Collection, LLC, brode@themotorcarcollection.com

**Physically Served:**